IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

UNITED STATES OF AMERICA

v.

MOUAAZ ELKHEBRI,

*Defendant.*

Case No. 1:21-cr-00200-CMH

FILED
IN OPEN COURT

NOV 3 0 2021

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## STATEMENT OF FACTS

The United States and the Defendant, MOUAAZ ELKHEBRI, stipulate that the allegations in Count One of the Superseding Indictment are true and correct. The United States and Defendant further stipulate that had the matter gone to trial, the United States would have proven the allegations in Count One of the Superseding Indictment and the following facts beyond a reasonable doubt through admissible and credible evidence.

1. From on or about July 14, 2016 to on or about March 6, 2020, in the Eastern District of Virginia and elsewhere, defendant MOUAAZ ELKHEBRI knowingly and intentionally conspired and agreed with Onyewuchi Ibeh, Jason Joyner, Anthony Ayeah and others, known and unknown, to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity—namely, wire fraud in violation of Title 18, United States Code, Section 1343—knowing that: (i) the transactions were designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity; and (ii) the property involved in the financial transactions represented the proceeds of said unlawful activity in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i).

2. It was the object of the conspiracy for Defendant and his coconspirators to launder the proceeds of wire fraud through monetary transactions.

3. To achieve the object of the conspiracy, Defendant and his coconspirators engaged in the following conduct in the Eastern District of Virginia and elsewhere:

### The Specified Unlawful Activity: Wire Fraud

4. The conspirators targeted several businesses in various industries (the "victim businesses"). The conspirators gained access to the victim businesses' computer networks, including their email servers and email accounts, through phishing attacks or the use of malware. Once the conspirators had access to the victim businesses' email accounts, the conspirators identified the employees of the victim businesses responsible for paying the companies' bills and other financial obligations (the "victim employee").

5. The conspirators then identified a company or other entity to which the victim businesses owed money (the "business partner"). The conspirators then contacted the victim employee by email, falsely claimed to be the business partner, told the victim employee that the business partner's bank account information had changed, and instructed the victim business to wire the money it owed to the business partner to a new bank account. The conspirators then gave the victim employee the bank routing number and account number to an account controlled by the conspirators and opened for the purpose of facilitating the fraudulent scheme. Then, the victim employee—believing they were wiring money to the actual business partner—wired money to an account controlled by the conspirators.

6. In so doing, the conspirators devised and intended to devise a scheme and artifice to defraud the victim businesses, and obtained money and property from the victim businesses by means of false and fraudulent pretenses, representations, and promises, and transmitted and caused to be transmitted by means of wire communication in interstate or foreign commerce, any writings,

signs, signals, pictures, and sounds for the purpose of executing the scheme and artifice to defraud, including the wire communications set forth herein and as set forth and incorporated in Counts 2 through 20 of the Superseding Indictment, in violation of Title 18, United States Code, Section 1343.

## The Money Laundering Conspiracy

7. Defendant's role in the conspiracy was to: (i) open bank accounts in his name that other coconspirators, including Onyewuchi Ibeh, used to launder the proceeds of the wire fraud scheme; and (ii) use his position as a bank employee to facilitate the opening of bank accounts in the names of other coconspirators. Defendant played no role in the underlying wire fraud conspiracy.

8. On July 14, 2016, Defendant used his position as an employee at a Bank of America branch located in the Eastern District of Virginia to open an account ending in -0479 at Bank of America (the "BOA-0479 account") in the name of "Victor Onyewuchi Sole Prop d/b/a/ Vision Land International General Tr." Defendant used the BOA-0479 account to launder the proceeds of the wire fraud scheme.

9. On February 8, 2018, Defendant opened an account ending in -2125 at Bank of America (the "BOA-2125 account") in the name of "Mouaaz Elkhebri Sole Prop d/b/a Elkhebri Transportation." The BOA-2125 account, which Defendant and Ibeh regularly accessed, was opened at a Bank of America branch located in the Eastern District of Virginia. Defendant and Ibeh used the BOA-2125 account to launder the proceeds of the wire fraud scheme.

10. On June 17, 2019, Defendant opened an account ending in -8059 at SunTrust Bank (the "SunTrust-8059 account") in the name of "Petra Transportation LLC." The SunTrust-8059 account was opened at a SunTrust Bank branch located in the Eastern District of Virginia. Defendant used the SunTrust-8059 account to launder the proceeds of the wire fraud scheme

11. The proceeds from the wire fraud scheme described above were ultimately transferred to the BOA-2125 account and SunTrust-8059 account.

12. Throughout the course of the conspiracy, the BOA-2125 account received at least $93,100 from at least three victims. Ibeh then used the BOA-2125 account to wire the proceeds of the fraudulent scheme to other coconspirators and otherwise spend the funds. While Ibeh kept the majority of the profits, Defendant was paid for his role in the conspiracy.

<u>Defendant and His Coconspirators Launder the Proceeds from Multiple Victims</u>

13. As a result of the scheme to defraud set forth above, on or about July 2, 2018, Company-1 sent an interstate wire transfer of funds in the amount of $63,174.33 to a Wells Fargo account ending in 8532 which was controlled by the conspirators. Company-1 intended to send the funds by wire to Victim Business-1. The next day, the funds intended for Victim Business-1 were transferred from the Wells Fargo account ending in 8532 to the BOA-2125 account, including a $8,100 wire transfer on July 3, 2018. The proceeds of the fraud were withdrawn in cash, wired to other coconspirators, and otherwise spent.

14. As a result of the scheme to defraud set forth above, on or about September 6, 2018, Company-2 sent an interstate wire transfer of funds in the amount of $93,039.24 to a Wells Fargo account ending in 7282 which was controlled by the conspirators. Company-2 intended to send the funds by wire to Victim Business-2. The next day, the funds intended for Victim Business-2 were transferred from the Wells Fargo account ending in 7282 to the BOA-2125 account, including a $60,000 wire transfer on September 10, 2018. The proceeds of the fraud were withdrawn in cash, wired to other coconspirators, and otherwise spent.

15. As a result of the scheme to defraud set forth above, on or about December 10, 2018, Victim Business-3 sent an interstate wire transfer of funds in the amount of $356,954.00 to a Wells Fargo account ending in 9986 which was controlled by the conspirators. Victim Business-

3 intended to send the funds by wire to Company-3. Over the next two days, the funds from Victim Business-3 were transferred from the Wells Fargo account ending in 9986 to the BOA-2125 account, including a $25,000 wire transfer on December 12, 2018. The proceeds of the fraud were withdrawn in cash, wired to other coconspirators, and otherwise spent.

16. As a result of the scheme to defraud set forth above, on or about March 6, 2020, Victim Business-4 sent an interstate wire transfer of funds in the amount of $255,637.03 to the SunTrust-8059 account which was controlled by Defendant. Victim Business-4 intended to send the funds by wire to Company-4. Less than a week later, SunTrust reversed the wire transfer before the funds were withdrawn, wired, or otherwise spent.

17. The actions of Defendant, as recounted above, were in all respects knowing, willful and deliberate, and were not committed by mistake, accident, or other innocent reason.

18. This Statement of Facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

Respectfully submitted,

Jessica D. Aber
United States Attorney

Date: 11/30/2021        By: _____
                            Christopher J. Hood
                            Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, Mouaaz Elkhebri, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
Mouaaz Elkhebri

I am Joni C. Robin, Defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Joni C. Robin
Attorney for Mouaaz Elkhebri